No. 24-30673

# United States Court of Appeals for the Fifth Circuit

PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA,

*Plaintiff-Appellant,*

v.

LIZ MURRILL, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF LOUISIANA,

*Defendant-Appellee,*

and

LOUISIANA PRIMARY CARE ASSOCIATION,

*Intervenor Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Louisiana (Lafayette)
No. 6:23-cv-00997 (Hon. Robert R. Summerhays)

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

Jeffrey J. Gelpi
KEAN MILLER LLP
909 Poydras Street, Suite 3600
New Orleans, LA 70112
(504) 585-2050
jeff.gelpi@keanmiller.com

L. Victor Gregoire
KEAN MILLER LLP
400 Convention Street, Suite 700
P.O. Box 3513 (70821-3513)
Baton Rouge, LA 70802
(225) 387-0999
victor.gregoire@keanmiller.com

Philip J. Perry
Andrew D. Prins
Abid R. Qureshi
Cherish A. Drain
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
philip.perry@lw.com

*Counsel for Plaintiff-Appellant Pharmaceutical Research and Manufacturers of
America*

**May 2, 2025**

## CERTIFICATE OF INTERESTED PERSONS

***Pharmaceutical Research and Manufacturers of America v. Murrill*, No. 24-30673**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1. **Plaintiff-Appellant:**
   Pharmaceutical Research and Manufacturers of America ("PhRMA").  PhRMA does not have a parent corporation, and no publicly held corporation owns 10% or more of its stock.

2. **Defendant-Appellee:**
   Liz Murrill, in her official capacity as Attorney General of Louisiana.

3. **Intervenor-Appellee**
   Louisiana Primary Care Association

4. **Amici Curiae:**
   American Hospital Association
   American Society for Health-System Pharmacists
   340B Health
   Louisiana Hospital Association

5. **Counsel for Plaintiff-Appellant**
   Jeffrey J. Gelpi, L. Victor Gregoire, KEAN MILLER LLP, 909 Poydras Street, Suite 3600, New Orleans, LA 70112.
   Philip J. Perry, Andrew D. Prins, Abid R. Qureshi, Cherish A. Drain, LATHAM & WATKINS LLP, 555 Eleventh Street, NW, Suite 1000, Washington, DC 20004.

6. **Counsel for Defendant-Appellee:**
   Brent Hicks, Riley Svikhart, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, II Rivermark Centre, 450 Laurel Street, 21st Floor, Baton Rouge, Louisiana 70801.
   Jorge Benjamin Aguinaga, Zachary Faircloth, Caitlin Ann Huettemann, Carey T. Jones, Alexander T. Reinbooth, LOUISIANA DEPARTMENT OF JUSTICE, P. O. Box 94005, Baton Rouge, Louisiana 70804.

7. **Counsel for Intervenor-Appellee:**

Ronald S. Connelly, Delaney Bounds, Hannah E. Hauer, Fernando Montoya, POWERS PYLES SUTTER & VERVILLE, PC, 1501 M St. NW, 7th Floor, Washington, DC 20005.

Carroll Devillier, Jr., BREAZEALE, SACHSE & WILSON, LLP, One American Pl., 301 Main St. Suite 2300, Baton Rouge, LA 70801.

8. **Counsel for Amici Curiae:**

William B. Schultz, Alyssa Howard Card, Margaret Dotzel, ZUCKERMAN SPAEDER, LLP, 1800 M St. NW, Suite 1000, Washington, DC 20036.

Dated: **May 2, 2025**

       */s/Philip J. Perry*
       Philip J. Perry

       *Attorney of Record for Plaintiff-Appellant Pharmaceutical Research and Manufacturers of America*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................v

INTRODUCTION ............................................................................1

ARGUMENT ...................................................................................5

    I.     Act 358 Is Preempted By Federal Law .................................5

          A.     Act 358 Intrudes On An Exclusively Federal Field....................5

                1.     Appellees Misapprehend The Federal Field And Act 358's Effect ................................................6

                2.     340B And Act 358 Govern The Same Conduct, Impeding Exclusive Federal Administration And Enforcement.................................................9

          B.     Act 358 Conflicts With 340B .........................................11

                1.     Act 358 Impermissibly Upends The Bargain Struck In 340B ..............................................11

                2.     Act 358 Unlawfully Limits Manufacturers' Ability To Collect Claims Data .................................15

                3.     Act 358 Conflicts With 340B's Exclusive Enforcement Mechanisms ...............................16

          C.     *McClain* Does Not Control This Case .....................................18

          D.     The State's Subject Matter Jurisdiction And "Constitutional" Concern Arguments Are Meritless................19

                1.     As This Court Has Long Recognized, It Has Jurisdiction Over Claims Like PhRMA's.......................20

                2.     Louisiana's Other "Concerns" Are Waived And Mistaken .........................................................22

II.    Act 358 Is Unconstitutionally Vague ................................................... 24

CONCLUSION ....................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Air Evac EMS, Inc. v. Tex., Dep't of Ins.*,
  851 F.3d 507 (5th Cir. 2017) ...............................................................20

*Arizona v. United States*,
  567 U.S. 387 (2012) ...............................................................................3

*Armstrong v. Exceptional Child Center, Inc.*,
  575 U.S. 320 (2015) ......................................................................20, 22

*Astra USA, Inc. v. Santa Clara Cnty.*,
  563 U.S. 110 (2011) .....................................................................*passim*

*Bauer v. Elrich*,
  8 F.4th 291 (4th Cir. 2021) ...................................................................10

*Carolina Youth Action Project v. Wilson*,
  60 F.4th 770 (4th Cir. 2023) .................................................................24

*Chamber of Com. of U.S. v. Whiting*,
  563 U.S. 582 (2011) ...............................................................................15

*CISPES v. FBI*,
  770 F.2d 468 (5th Cir. 1985) ................................................................15

*Collins v. Yellen*,
  594 U.S. 220 (2021) ...............................................................................25

*CoreCivic, Inc. v. Murphy*,
  690 F. Supp. 3d 467 (D.N.J. 2023) .......................................................17

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000) ..........................................................................13, 14

*Crown Castle Fiber, L.L.C. v. City of Pasadena*,
  76 F.4th 425 (5th Cir. 2023) .................................................................21

*Detgen v. Janek,*
    752 F.3d 627 (5th Cir. 2014) ...............................................................23

*Easom v. US Well Servs., Inc.,*
    37 F.4th 238 (5th Cir. 2022) ...................................................................7

*Elam v. Kan. City S. Ry. Co.,*
    635 F.3d 796 (5th Cir. 2011) .................................................................21

*Ex parte Young,*
    209 U.S. 123 (1908).............................................................................20

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n,*
    505 U.S. 88 (1992)..............................................................................14

*Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves,*
    601 F.2d 809 (5th Cir. 1979) .................................................................25

*John Doe No. 1 v. Reed,*
    561 U.S. 186 (2010).............................................................................27

*Moody v. NetChoice, LLC,*
    603 U.S. 707 (2024).............................................................................25

*N. Alamo Water Supply Corp. v. City of San Juan,*
    90 F.3d 910 (5th Cir. 1996) ..................................................................22

*NAACP v. Button,*
    371 U.S. 415 (1963).............................................................................26

*Nat'l Meat Ass'n v. Harris,*
    565 U.S. 452 (2012)..............................................................................8

*NetChoice, LLC v. Fitch,*
    No. 1:24-cv-170, 2024 WL 3276409 (S.D. Miss. July 1, 2024) .......................26

*New Orleans & Gulf Coast Ry. v. Barrois,*
    533 F.3d 321 (5th Cir. 2008) .................................................................21

*Novartis Pharmaceuticals Corp. v. Johnson,*
    102 F.4th 452 (D.C. Cir. 2024)...................................................*passim*

*Novartis Pharms. Corp. v. Espinosa*,
  No. 21-cv-1479, 2021 WL 5161783 (D.D.C. Nov. 5, 2021).....................*passim*

*People for the Ethical Treatment of Animals, Inc. v. N.C. Farm*
  *Bureau Fed'n, Inc.*,
  60 F.4th 815 (4th Cir. 2023) ...............................................................26

*PhRMA v. Morrisey*,
  No. 24-cv-00271, 2024 WL 5147643 (S.D. W. Va. Dec. 17, 2024)..........*passim*

*Planned Parenthood of Cent. N.J. v. Farmer*,
  220 F.3d 127 (3d Cir. 2000) ...............................................................25

*Planned Parenthood of Houston & Se. Tex. v. Sanchez*,
  403 F.3d 324 (5th Cir. 2005) ..............................................................23

*Rollins v. Home Depot USA, Inc.*,
  8 F.4th 393 (5th Cir. 2021) .................................................................16

*Rubin v. Islamic Republic of Iran*,
  583 U.S. 202 (2018)...............................................................................7

*Sanofi Aventis U.S. LLC v. HHS*,
  58 F.4th 696 (3d Cir. 2023) ...........................................................2, 11

*Shaw v. Delta Air Lines, Inc.*,
  463 U.S. 85 (1983)...............................................................................20

*Smith v. Ark. State Highway Emps., Loc. 1315*,
  441 U.S. 463 (1979)..............................................................................26

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011)..............................................................................26

*St. Luke's Health Sys., Ltd. v. Labrador*,
  No. 25-cv-00015, 2025 WL 888840 (D. Idaho Mar. 20, 2025) ........................24

*TelTech Systems, Inc. v. Bryant*,
  702 F.3d 232 (5th Cir. 2012) .......................................................3, 14

*Templeton v. Jarmillo*,
  28 F.4th 618 (5th Cir. 2022) ...............................................................22

*Tex. Riogrande Legal Aid, Inc. v. Range,*
No. 3:10-cv-406, 2014 WL 12284039 (S.D. Miss. Mar. 31, 2014) .................23

*United States v. Alabama,*
691 F.3d 1269 (11th Cir. 2012). Act 358 ..........................................................17

*United States v. Elliot,*
No. 2:17-cr-33, 2018 WL 11478272 (N.D. Ga. Aug. 8, 2018) .........................24

*United States v. Texas,*
97 F.4th 268 (5th Cir. 2024) ..............................................................................21

*Van Deelen v. Johnson,*
497 F.3d 1151 (10th Cir. 2007) .........................................................................26

*Villas at Parkside Partners v. City of Farmers Branch,*
726 F.3d 524 (5th Cir. 2013) ..........................................................................8, 13

*Witty v. Delta Air Lines, Inc.,*
366 F.3d 380 (5th Cir. 2004) ...............................................................................6

*Wos v. E.M.A. ex rel. Johnson,*
568 U.S. 627 (2013).............................................................................................7

## STATUTES

28 U.S.C. § 1331 ........................................................................................20, 21

42 U.S.C.
§ 256b......................................................................................................1
§ 256b(a)(1) ....................................................................................1, 6, 12
§ 256b(a)(4) .......................................................................................7, 16
§ 256b(a)(5) ...............................................................................................7
§ 1396c(2) ...............................................................................................23

La. Stat. Ann.
§ 40:2882(1).......................................................................................16, 18
§ 40:2882(2).............................................................................................16
§ 40:2884 .......................................................................................4, 8, 18
§ 40:2884(A)......................................................................................15, 24
§ 40:2884(B).............................................................................................25

# OTHER AUTHORITIES

A. Scalia & B. Gardner, *Reading Law: The Interpretation of Legal Texts* (2012) ...................................................................................7

Black's Law Dictionary (12th ed. 2024) ...................................................9

# INTRODUCTION

The 340B Drug Pricing Program, 42 U.S.C. § 256b ("340B"), embodies a delicate federal bargain:  Congress intended 340B to stretch federal resources through private funding while not becoming so onerous that drug manufacturers are incentivized to withdraw from participation.  Given the stakes, it is unsurprising the Supreme Court has already concluded Congress intended 340B to operate "on a uniform, nationwide basis" with a federal agency, the U.S. Department of Health and Human Services ("HHS"), "hold[ing] the control rein." *See Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 119-20 (2011).  Dissatisfied with the balance struck by Congress, Louisiana has, through Act 358, attempted to implement its own vision of what it believes 340B should require.  That effort runs headlong into the Supremacy Clause.

The State and Intervenor primarily argue that 340B is purportedly "silent" about delivery of 340B-priced drugs and contract pharmacies, and so Louisiana can step into that alleged gap and fill in its own preferred terms.  La. Br. at 15, 28, Int. Br. at 3-4, 21, 39.  That assertion suffers from a multitude of flaws.  Most fundamentally, Appellees ignore the principal provision of the federal statute creating and limiting drug manufacturer obligations to sell at 340B prices to maintain Congress's chosen balance.  Congress provided in 42 U.S.C. § 256b(a)(1) that, in

exchange for participating in Medicaid and Medicare Part B, drug manufacturers must "offer" to sell certain drugs at steeply reduced 340B prices.

The scope of that required "offer"—and what terms it must include—*is solely a question of federal law that two federal appellate courts have already decided*. In *Novartis Pharmaceuticals Corp. v. Johnson*, the D.C. Circuit explained that a federal offer must be *bona fide* and can include reasonable conditions, including as to delivery. 102 F.4th 452, 462-64 (D.C. Cir. 2024). The decision further established that the same conditions at issue here—a one contract-pharmacy condition and a claims data condition—are both permissible. *Id.* at 463. If a covered entity does not accept the manufacturer offer with these permissible conditions, *there is no 340B purchase under federal law* and no manufacturer obligation to provide 340B pricing arises. The scope of the federal offer thus defines the scope of manufacturers' 340B obligations. *See also Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 703-06 (3d Cir. 2023) (discussing the "shall offer" provision).

There is no gap or silence on this issue that permits state action. By effectively requiring manufacturers to make offers broader than those required under federal law, Louisiana forces manufacturers to enter into a wide range of 340B-priced transactions not mandated by 340B. Act 358 thus directly interferes with and attempts to vastly expand the scope of the limited program Congress created, and radically alters the careful balance Congress struck. This fundamental point makes

clear why Act 358 is preempted.  *See PhRMA v. Morrisey*, No. 24-cv-00271, 2024 WL 5147643 (S.D. W. Va. Dec. 17, 2024) (holding that similar law was preempted).

Precedent from the Supreme Court and this Court reinforces that outcome. 340B speaks directly to the issue of contract pharmacies and delivery by making clear manufacturers have no responsibilities vis-à-vis contract pharmacies and that contract pharmacies are not 340B participants:  (1) Manufacturers are required only to make a bona fide "offer," which can include restrictions on delivery or distribution to contract pharmacies;  (2) Only enumerated covered entities, not contract pharmacies, are entitled to 340B-priced drugs; and (3) Covered entities are only permitted to provide 340B-priced drugs to their patients, with no authorization to provide them to contract pharmacies.  *See infra* at 6-9.  As cases like *TelTech Systems, Inc. v. Bryant*, 702 F.3d 232 (5th Cir. 2012), and *Arizona v. United States*, 567 U.S. 387 (2012), hold, Congress need not speak to a particular issue in explicit terms to have preemptive effect where statutory context is clear that Congress deliberately left an issue unregulated.  Congress accordingly did not have to explicitly state "no contract pharmacies allowed" for 340B to have preemptive effect on the issue.

In any event, Act 358's text does not limit it to regulating only "delivery" as Louisiana and Intervenor contend.  As the *Morrisey* court recognized, there is no difference between mandating delivery of a drug at a certain price and imposing a

pricing requirement in this context.  2024 WL 5147643, at *8.  Acknowledging as much, Act 358, by its explicit terms, is not limited to delivery *at any price* but instead applies to "delivery" and  "acquisition" of a drug *at the 340B price*.  La. Stat. Ann. § 40:2884.

The State and Intervenor's other rebuttal points fare no better.  As to claims data, although Intervenor appears to recognize (at 52) there would be federal preemption if Louisiana enforced its law to bar a drug company's "claims data" policy, Louisiana remains conspicuously silent.  Given that silence, the Court should hold that Appellees have waived any argument that a claims data restriction is not preempted.  *See infra* at 15-16.  In any case, there is no wiggle room:  Act 358 is preempted to the extent it makes a claims data policy illegal.  *Novartis*, 102 F.4th at 463-64 (holding claims data policy is a permissible condition), *Morrisey*, 2024 WL 5147643, at *6-7 (holding that such a restriction was preempted).

Finally, the State and Intervenor have no real answer to the preemption problems posed by Louisiana's usurping of HHS's enforcement authority and instead contend that Act 358 governs different conduct (delivery).  That simply is not true, for the reasons explained.  And more to the point, the federal government has asserted authority over the *same* disputes covered by Act 358.  PhRMA Br. at 30.  In any adjudication of a violation of Act 358, state decisionmakers will have to address multiple questions of federal law that overlap with the federal agency.  But,

as *Astra* explains, Congress established 340B as an exclusively federal program with sole enforcement power vested in the federal government and overseen by federal courts to ensure uniformity in obligations and enforcement. 563 U.S. at 120-22. Act 358 now threatens that uniformity in multiple ways, including by interjecting state authorities as arbiters of manufacturers' obligations and by introducing additional state penalties on manufacturers faithfully discharging their federal obligations. *Id.* at 119-22.

Appellees' other arguments regarding jurisdiction, purported "constitutional concerns," and vagueness do not withstand scrutiny either. Louisiana's argument on jurisdiction is foreclosed by binding precedent that Louisiana ignores, and its "constitutional concerns" are waived and meritless. Finally, on vagueness, Appellees provide no clarification on the meaning of the term "interfere" as used in Act 358, and instead simply assert ipse dixit that the meaning is clear.

PhRMA respectfully requests the Court reverse and remand with instructions to enter summary judgment in favor of PhRMA.

## ARGUMENT

## I.   ACT 358 IS PREEMPTED BY FEDERAL LAW

### A.   Act 358 Intrudes On An Exclusively Federal Field

As PhRMA explained in its opening brief (at 21-32), Congress designed 340B to provide a comprehensive and exclusive plan for delivering a uniquely privately-funded federal benefit. Congress limited the scope of 340B obligations imposed on

participating manufacturers by circumscribing who is entitled to 340B pricing and what can be done with 340B-priced drugs, and by creating a carefully calibrated federal enforcement scheme. *Astra*, 563 U.S. at 120. Given that comprehensiveness and dominant federal interest, Congress occupied the field. *See Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 385 (5th Cir. 2004) (finding preemption where federal statute "require[d] a delicate balance"). Act 358 intrudes into the federal field substantively and procedurally.

### 1.     Appellees Misapprehend The Federal Field And Act 358's Effect

Appellees' principal defense (La. Br. at 26, 28, Int. Br. at 26-27) is that 340B is about pricing and is purportedly silent about delivery and contract pharmacies, the topics they assert are governed by Act 358. Appellees misapprehend the scope of 340B's field and misrepresent what Act 358 actually does.

340B's field extends *beyond pricing* to establish who can receive 340B-priced drugs and how they are to be handled—the very things Act 358 also purports to govern. Congress defined manufacturers' 340B *obligations*, including by requiring only a "bona fide" offer, which can include reasonable contract pharmacy restrictions. *See infra* at 11-13. And it further spoke to issues of delivery, specifically *who may receive 340B-priced drugs and how*. It dictated eligibility to receive them. *See* 42 U.S.C. § 256b(a)(1) (federal ceiling price applies only to

covered entities); *id.* § 256b(a)(4) (listing, in detail, entities that qualify).[1]  It also

dictated *how 340B-priced drugs would flow from manufacturers to covered entities*,

either through a "prime vendor program" or "directly from a manufacturer," in

which case "the manufacturer shall be responsible for the costs of distribution." *Id.*

§ 256b(a)(8).  Finally, Congress also specified that "a covered entity shall not resell

or otherwise transfer [a covered outpatient] drug to a person who is not a patient of

the entity." *Id.* § 256b(a)(5)(B).  That precludes transfers, whether or not a sale

occurs, otherwise it would have no independent effect given the separate prohibition

on "res[ales]." *See Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 213 (2018) (rule

against surplusage).

In short, 340B goes well beyond pricing.  It provides that 340B-priced drugs

are for covered entities alone and bars onward distribution of 340B-priced drugs to

anyone other than their patients.  Louisiana, ignoring Congress's commands in that

field, *mandates* that 340B-priced drugs be provided to contract pharmacies, who are

not covered entity patients.[2]  Because Act 358 invades the field, it is preempted.

---

[1] The *expressio unius* canon applies given the detailed list of entities.  *See* A. Scalia
& B. Gardner, *Reading Law: The Interpretation of Legal Texts* 107 (2012); *Easom
v. US Well Servs., Inc.*, 37 F.4th 238, 244 (5th Cir. 2022).

[2] Imagine if Act 358 said "[n]otwithstanding the prohibition in 42 U.S.C.
§ 256b(a)(5)(B), covered entities may transfer 340B-priced drugs to contract
pharmacies."  Would Appellees argue that law was not preempted?  If not,
Louisiana's restriction on manufacturers here, which mandates the same result,
should be foreclosed.  *See Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 636 (2013)

7

Even if this Court accepted Appellees' narrow conception of the federal field as concerning only pricing (La. Br. at 28, 33, Int. Br. at 4), and it should not, their contention that Act 358 falls outside the field because it only regulates delivery does not follow. In this context, any distinction between "pricing" and "delivery" is artificial. Because pharmacies already have access to all of the same drugs, the question is not whether the pharmacy will get the drug, it is only what price the pharmacy and covered entity will pay when the pharmacy replenishes its inventory. *Morrisey*, 2024 WL 5147643, at *8. As the *Morrisey* court explained, "[b]ecause the drug is already in the hands of the contract pharmacy even before the patient arrives at the pharmacy, the question *is not about delivery* of the drug. The question is *only about what price* the pharmacy and the covered entity will pay the manufacturer for the replenished drug upon distribution of the 340B Program eligible one." *Id.* (emphasis added). Any distinction between "delivery" and "pricing" is false, given that Act 358 is about "delivery *at a given price*, not delivery *per se.*" *Id.*

Act 358's text and the law's practical effect further reinforce this conclusion. Act 358's text regulates delivery *and "acquisition"* of drugs at 340B prices. La. Stat. Ann. § 40:2884. Act 358's use of "acquisition" makes clear it sweeps more broadly

---

(looking to the state statute's operation and effect); *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 463-64 (2012); *Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524, 535 (5th Cir. 2013).

than "delivery." *See* Acquisition, Black's Law Dictionary (12th ed. 2024) ("Something acquired; esp., something one has obtained by *buying it* or being given it" (emphasis added)). And Act 358 incorporates a pricing term through use of "340B drug," meaning it requires manufacturers to both deliver and allow the acquisition of a drug *at the 340B price*.

Act 358's real-world application bears that out. If Act 358 regulates only delivery without regard to pricing, Louisiana has to concede manufacturers with one contract pharmacy and claims data policies comply with Act 358 since they already provide the *same drugs* in the *same circumstances* but at market-based prices. *See Morrisey*, 2024 WL 5147643, at *8. The only thing that renders manufacturers noncompliant with Act 358 is not providing the *340B price*. Because Act 358 regulates pricing, not solely delivery, it wades into the federal field, even under Appellees' narrower conception of the field.

>    **2.    340B And Act 358 Govern The Same Conduct, Impeding Exclusive Federal Administration And Enforcement**

As PhRMA explained (at 29-32), *Astra* provides that the federal government has sole administrative and enforcement power over 340B to ensure uniformity. Relying on their pricing and delivery distinction, Appellees argue (La. Br. at 32, Int. Br. at 33) that *Astra* is distinguishable because it concerned plaintiffs trying to enforce 340B pricing through a common law action, while Act 358 enforces a differing requirement concerning delivery to contract pharmacies.

It is untrue that the actions in *Astra* and enforcement under Act 358 concern different conduct. Louisiana has explicitly appended its law onto 340B, and contends (at 33) that a pricing obligation flows from the federal statute.[3] ROA24-30673.1220. Because Act 358 relies on a purported federal obligation to provide 340B pricing, any adjudication will require Louisiana to provide its own answers to multiple questions of federal law regarding whether 340B obligations even exist in the first place.[4] *See infra* at 16-17. That will infringe on the federal agency's ability to render uniform nationwide decisions, the very same concern that drove the Court's decision in *Astra*. 563 U.S. at 119-20; *see also Bauer v. Elrich*, 8 F.4th 291, 306 (4th Cir. 2021) (Quattlebaum, J., dissenting) (stating *Astra* "evoked the legal concepts underlying federal preemption"). If anything, Act 358 poses an even greater threat to uniformity and federal control than the breach-of-contract action in

---

[3] Louisiana argues (at 32-33) that Act 358 can reference 340B without being preempted. However, Act 358 does not simply reference 340B drugs—it impermissibly interferes and drastically changes the federal program, imposing new obligations on manufacturers for the benefit of its preferred private parties.

[4] Intervenor suggests (at 49-50) that these various questions of federal law have an unassailable answer. Not so. Manufacturers have a right to challenge these threshold legal issues, and they would need to be litigated individually.

Additionally, Intervenor states (at 7) that it is "aware of no ADR proceeding in which a manufacturer challenged the use of contract pharmacy arrangements." Covered entities have sought to use ADR to enforce this purported obligation to provide 340B-priced drugs to all contract pharmacies identified by a covered entity. ROA24-30673.234-56; ROA24-30673.1042-57.

*Astra* because it also contemplates adding obligations and actors (unlimited contract pharmacies) into the mix.

Although Louisiana appears to concede (at 11) that Congress tasked HHS with dealing with contract pharmacy abuses, like diversion and duplicate discounting, it has chosen to step into HHS's shoes, ruling uniformly for contract pharmacies through Act 358.[5]  Act 358 is field preempted.

### B.    Act 358 Conflicts With 340B

As PhRMA explained (at 32-51), Act 358 is conflict preempted for multiple reasons.  Act 358 fundamentally alters the bargain Congress struck in 340B by requiring manufacturers to engage in many more transactions at the 340B price than federal law requires.  *See Novartis*, 102 F.4th at 460-64; *Sanofi*, 58 F.4th at 704-06. It also appears to prevent manufacturers from conditioning the use of contract pharmacies on providing claims data, despite manufacturers' need for that information to access the federal enforcement regime.  Finally, Act 358 conflicts with 340B's centralized enforcement scheme.  *Astra*, 562 U.S. at 120.

### 1.    Act 358 Impermissibly Upends The Bargain Struck In 340B

Act 358 alters the terms of the required federal "offer" and accordingly skews

---

[5] Louisiana argues (at 25) that 340B's structure as a purportedly voluntary program precludes preemption.  That argument was not raised below and so is waived.  *See infra* at 22.  In any event, Louisiana provides no support, and the argument makes no sense since PhRMA's point is that manufacturers *did not* agree to Louisiana's rewritten version of 340B.

the balance struck by Congress.

Louisiana largely ignores PhRMA's argument regarding the federal "offer" and the balance Congress struck, instead asserting (at 35-36) that "the same universe of covered entities that purchase [340B-priced] drugs at such discounts before Act 358 does so after Act 358." That sidesteps that Act 358 requires 340B-priced drugs to be provided in many more circumstances than under federal law, in conflict with the limitations Congress built into 340B to effectuate its chosen balance.

340B is a unique federal program, whereby Congress mandated that, as a condition of participating in other federal programs, one private party provide a benefit to another private party. To avoid 340B becoming too onerous and disincentivizing manufacturer participation, Congress built in limitations on when manufacturers must provide the 340B ceiling price and the scope of their 340B obligations. Specifically, manufacturers are required only to make a "bona fide" offer, which can include reasonable conditions such as one contract pharmacy and claims data policies. *Novartis*, 102 F.4th at 462-64. If a covered entity, or a contract pharmacy purporting to act on its behalf, does not accept an offer with those terms, there is no qualifying "purchase" under 42 U.S.C. § 256b(a)(1). And if there is no "purchase" by a covered entity under that provision, there is no obligation to provide any federal 340B pricing. Accordingly, by permitting the inclusion of reasonable terms and requiring acceptance of those terms to obtain the 340B price, Congress

has tied the scope of obligations to the terms of a permissible 340B offer. And covered entities and contract pharmacies, of course, remain free to purchase the same drugs at the commercial price, with delivery to the *same* pharmacies.

Act 358 eviscerates those limitations, upending the balance struck by Congress. It forces manufacturers to provide the 340B price even where a covered entity has not assented to the terms of a manufacturer's federal offer and no qualifying 340B "purchase" has accordingly occurred under federal law. By doing so, Act 358 greatly expands the circumstances where a manufacturer is required to provide 340B-priced drugs. Louisiana's reconception of 340B is a stark departure from Congress's "bona fide" offer requirement, which is all that manufacturers agreed to as part of the program.[6] That expansion of the subsidy manufacturers must provide under 340B *is the conflict*.[7]

---

[6] Intervenor's argument (at 2, 24-25, 45) that Act 358 is presumed to be valid because it shares "common purposes" with 340B is wrong. Allowing states to expand the scope of the federal benefit upsets the considered balance struck by Congress. *See, e.g.*, *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 379-80 (2000) ("conflicting means" of reaching "a common end" are still preempted); *Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524, 529-30 (5th Cir. 2013) (same); *Novartis Pharms. Corp. v. Espinosa*, No. 21-cv-1479, 2021 WL 5161783, at *7 (D.D.C. Nov. 5, 2021) (holding 340B's "structure suggests that Congress did not intend Section 340B's purposes to be pursued at all costs").

[7] Louisiana appeals (at 36-37) to its own power as a state. But whether Louisiana would have independent power to enact its own 340B-like regime (an effort that would run into its own constitutional hurdles) says nothing about Louisiana's authority to pile its own preferred obligations onto 340B. The expansion of federal

Nor is it any answer, as Appellees assert (La. Br. at 15, Int. Br. at 3-4, 21, 39), that 340B is purportedly silent on contract pharmacies and delivery. Appellees are wrong about the "silence," *see supra* at 6-7. In any event, this Court and the Supreme Court have found conflict preemption where Congress did not address an issue in explicit terms, even where a state exercised wholly independent authority. *See* PhRMA Br. at 39-41 (discussing *TelTech* and *Arizona*). Contrary to Appellees' assertions (La. Br. at 39-40, Int. Br. at 42), *TelTech* teaches that Congressional silence can itself be a deliberate choice that must be respected under preemption principles. *See Teltech Sys., Inc. v. Bryant*, 702 F.3d 232, 239 (5th Cir. 2012). Here, Congress considered and selected the obligations it wanted to impose for 340B participation (requiring only a "bona fide" offer that can include delivery restrictions, limiting who could receive 340B-priced drugs, etc.). *Crosby*, 530 U.S. at 379-80; *Novartis*, 2021 WL 5161783, at *7. Congress did not have to enumerate every obligation it chose *not* to impose on 340B-participating manufacturers for its decision to have preemptive effect. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 103 (1992) ("A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach that goal."); *Crosby*, 530 U.S. at 365-66, 380 (holding that state law was preempted because it conflicted with

---

obligations that manufacturers incur as part of 340B participation skews Congress's chosen balance and threatens 340B's viability.

14

"achievement of the federal decision about the right degree of pressure to employ").

Altering Congress's carefully calibrated, chosen scheme, as Act 358 does, obstructs Congress's goals, including the means it selected to achieve those goals. Act 358 is preempted.[8]

### 2. Act 358 Unlawfully Limits Manufacturers' Ability To Collect Claims Data

PhRMA explained (at 49-51) that Act 358 appears to limit manufacturers' ability to condition contract pharmacy use on an agreement to provide claims data. Intervenor concedes (at 52-53) that "the 340B statute's auditing and [administrative dispute resolution] provisions dictate that the drug manufacturers *are entitled to claims data*" and claims that "Act 358 does not bar a manufacturer from obtaining claims data." *See Morrisey*, 2024 WL 5147643, at *5-7.

Louisiana, however, has said nothing about the claims data issue.[9] Given Louisiana chose not to defend the legality of Act 358 insofar as it prohibits claims data policies, this Court should hold Louisiana waived any such argument and thus

---

[8] Louisiana's reliance on the plurality opinion in *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 590 (2011) is curious. That opinion determined that a state law involving immigration was not preempted because it fell "squarely within the federal statute's savings clause" and did not "otherwise conflict with federal law." *Id.* at 587, 600. By contrast, Congress did not provide any sort of carveout for states to regulate 340B, and Louisiana has gone far afield of what 340B allows.

[9] Act 358's savings clause, La. Stat. Ann. § 40:2884(A), does not help Appellees: A provision instructing that a statute is not to be construed to conflict with state, federal, or constitutional law "cannot substantively operate to save an otherwise invalid statute." *CISPES v. FBI*, 770 F.2d 468, 474 (5th Cir. 1985).

that Act 358 is preempted to the extent it does. *Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 & n.1 (5th Cir. 2021) (an argument is waived by "failing to adequately brief [it] on appeal"); *Morrisey*, 2024 WL 5147643, at *5-7 (holding claims data restriction is preempted).

### 3.    Act 358 Conflicts With 340B's Exclusive Enforcement Mechanisms

PhRMA explained (at 10, 24-25, 29, 31-32, 45-48) that, by setting up its own enforcement scheme that would address federal law issues and impose penalties not contemplated under federal law, Act 358 conflicts with the federal enforcement mechanism deemed exclusive in *Astra*, 563 U.S. at 113.

Louisiana again falls back (at 32) on its delivery to contract pharmacies/pricing distinction, asserting that Act 358 governs different conduct than 340B. But Act 358 makes its restrictions dependent on a purported preexisting federal obligation. La. Stat. Ann. § 40:2882(1)-(2). How will Louisiana know if a drug qualifies as a 340B drug or whether a covered entity is authorized to participate in 340B without resolving core federal questions? Louisiana has no answer.

Intervenor asserts (at 49-50) that Louisiana can determine covered entity eligibility based on a list on the Office of Pharmacy Affairs' website. But Louisiana cannot deny manufacturers the right to challenge a covered entity's continuing eligibility if there are grounds to do so. 42 U.S.C. § 256b(a)(4) (providing an entity must meet the statutory requirements, including compliance with the provision

16

barring sales and transfers, to continue to qualify as a covered entity). Moreover, that is just one of several federal issues Louisiana would need to resolve—Louisiana would also have to determine if the prescriptions and drugs themselves are eligible for 340B pricing; the manufacturer provided the 340B price; and diversion or duplicate discounting occurred, including assessing if a specific drug was distributed to a covered entity's "patient." *See Morrisey*, 2024 WL 5147643, at *11.

This resolution of federal questions raises the same concern identified in *Astra*: Congress made HHS exclusive administrator of 340B to ensure 340B is administered "on a uniform, nationwide basis." 563 U.S. at 120. Allowing covered entities the "right to proceed" in alternate forums will "spawn a multitude of dispersed and uncoordinated lawsuits," creating a "substantial" "risk of conflicting adjudications." *Id.* The *Morrisey* court (the first court to seriously contend with *Astra*) concluded as much, recognizing that *Astra*'s "holding … controls." 2024 WL 5147643, at *9-11.

Act 358 is conflict preempted.[10]

---

[10] Appellees are also wrong (La. Br. at 22, Int. Br. at 23-25) that the presumption against preemption applies. Act 358 operates directly on 340B and targets, specifically, 340B-priced drugs (not drugs generally). It thus targets an area of unique federal concern. *See* PhRMA Br. at 51 n.4 (collecting cases).

Appellees' "mere reference to its health and safety interests is insufficient alone to invoke the presumption[]." *CoreCivic, Inc. v. Murphy*, 690 F. Supp. 3d 467, 487 (D.N.J. 2023). Instead, this Court "must contemplate the practical result of the state law, not just the means that a state utilizes to accomplish the goal." *United States v.*

### C.    *McClain* Does Not Control This Case

Appellees rely heavily on the Eighth Circuit's *Pharmaceutical Research & Manufacturers of America v. McClain* decision.  95 F.4th 1136 (8th Cir. 2024).  This reliance is misguided.

First, *McClain* did not consider or address the issue of claims data at all.  Second, *McClain* assumed (incorrectly) that the Arkansas statute merely regulated drug "delivery" and the "practice of pharmacy"—areas traditionally left to state regulation.  *McClain*, 95 F.4th at 1143-44, 1145.  That is not true of Act 358.  Drugs are already available to contract pharmacies—the only thing that Act 358 governs is the price at which those drugs are acquired.  *See supra* at 8; *Morrisey*, 2024 WL 5147643, at *8 ("The question is only about what price the pharmacy and the covered entity will pay the manufacturer for the replenished drug upon distribution of the 340B Program eligible one.  Put another way, the system is about delivery at a given price, not delivery per se.").  Act 358 admits as much, instructing that manufacturers may not prohibit the "*acquisition* of a 340B drug" by contract pharmacies.  La. Stat. Ann. § 40:2884; La. Stat. Ann. § 40:2882(1) (defining drugs by reference to the 340B price).

---

*Alabama*, 691 F.3d 1269, 1296 (11th Cir. 2012).  Act 358 is not a health and safety or consumer protection regulation:  It does not protect rural and low-income patients at all, as Appellees assert (La. Br. at 5, 13, Int. Br. at 4-5), but effectuates a wealth transfer between manufacturers and private companies.  And it does not regulate the practice of pharmacy, as it imposes a requirement on *manufacturers*.

Third, *McClain* couched its holding, that the Arkansas statute did not introduce contract pharmacies into 340B's closed system, on the premise that covered entities—the only entities eligible for 340B pricing—retain title to 340B-priced drugs and that contract pharmacies act as their agents. *See* 95 F.4th at 1142, 1144. These fictions were necessary to avoid the conclusion that covered entities and contract pharmacies were engaged in unlawful diversion. *See supra* at 7. Those premises are faulty and certainly not supported by the record here. *See* ROA24-30673.1192-94 (covered entities do not take title or require contract pharmacies to act as agents).

*McClain* was incorrectly decided and is inapplicable here.

### D.    The State's Subject Matter Jurisdiction And "Constitutional" Concern Arguments Are Meritless

On appeal, Louisiana raises multiple new issues for the first time. First, Louisiana advances (at 18-22) the remarkable argument that this Court lacks jurisdiction over PhRMA's preemption claim. That argument is unsupported by the State's cited authority and flies in the face of this Court's longstanding precedent. Second, Louisiana asserts (at 40-52) that PhRMA's preemption claim raises separation of powers and federalism concerns. The latter argument is waived since it was not raised below and is, in any case, wrong.

19

1.    **As This Court Has Long Recognized, It Has Jurisdiction Over Claims Like PhRMA's**

Louisiana contends (at 19) that this Court lacks jurisdiction over preemption claims because the Supremacy Clause does not provide a cause of action. That argument wildly misrepresents precedent. As the Supreme Court has long held, "[a] plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983). As PhRMA stated in its complaint, this Court has jurisdiction under 28 U.S.C. § 1331 and *Ex parte Young*, 209 U.S. 123 (1908). ROA24-30673.24.

Louisiana's argument on this point is less than clear, but the State seems to suggest (at 19-20) that the Supreme Court somehow *overturned Shaw* (and similar precedent) in *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 324 (2015). But *Armstrong* itself makes clear that Louisiana is wrong: "[A]s we have long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Id.* at 326. And this Court *has already rejected* Louisiana's argument, holding that "*Armstrong* does not modify *Shaw*'s clear language." *Air Evac EMS, Inc. v. Tex., Dep't of Ins.*, 851 F.3d 507, 515 (5th Cir. 2017). As the Court explained,

*Armstrong*'s "holding requires [a plaintiff] proceed under *Ex parte Young*, if at all; but, it does not contradict *Shaw*'s plain grant of federal-question jurisdiction under Article III and 28 U.S.C. § 1331." *Id.*; *United States v. Texas*, 97 F.4th 268, 275-77 (5th Cir. 2024) ("[A] plaintiff is not prevented from gaining equitable relief on preemption grounds."); *Crown Castle Fiber, L.L.C. v. City of Pasadena,* 76 F.4th 425, 433 (5th Cir. 2023).

Louisiana ignores this binding precedent and instead points to purported "black-letter law" regarding "[d]efensive preemption."  La. Br. at 19 (citing *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) and *New Orleans & Gulf Coast Ry. v. Barrois*, 533 F.3d 321, 331 (5th Cir. 2008)).  The cases cited by Louisiana addressed removal jurisdiction and *complete* preemption in the context of complaints raising only *state law* claims.  *Elam*, 635 F.3d at 803; *Barrois*, 533 F.3d at 330-31.  *Barrois* itself completely undermines the State's argument.  *Barrois*, 533 F.3d at 329 ("*Shaw*, among the progeny of *Ex parte Young*, *clearly establishes* a federal right of action against 'state officials' to enjoin the enforcement of preempted state regulations. This cause of action against state officials *is an affirmative federal claim that can form the basis for federal jurisdiction*." (emphasis added)).

This Court has jurisdiction.

## 2.    Louisiana's Other "Concerns" Are Waived And Mistaken

Louisiana also raises (at 41, 48) two waived "constitutional problems," separation of powers and federalism.  This Court should not reach those issues given they were not raised below.  *See Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022); *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir. 1996).  In any event, these arguments are just as flawed as Louisiana's subject matter jurisdiction argument.

Louisiana asserts (at 41-48), relying on *Armstrong*, that the preemption claim raises a separation of powers concern because Congress purportedly barred equitable relief under *Ex parte Young* in 340B.  That is wrong.  Unlike 340B, *Armstrong* involved the Medicaid program, under which *states* and the federal government reach an agreement, and it concerned an attempt by private parties to enforce the Medicaid Act requirements against a state participant.  575 U.S. at 323-28.  In that context, the Court held that two aspects of the Medicaid Act, taken together, established Congress's intent to foreclose equitable relief: that Congress's sole remedy for a breach of the state's Medicaid requirements was a withholding of federal funds by HHS *and* that the vague provision sought to be enforced was "judicially unadministrable." *Id.* at 328-29.

That case has no bearing here.  Unlike Medicaid, 340B *is not* a cooperative program between the states and the federal government but instead between the

federal government and manufacturers.  While Louisiana asserts (at 44-45) that the sole remedy here is for HHS to withhold Louisiana's Medicaid funds, relying on 42 U.S.C. § 1396c(2), that provision provides for withholding of funds where "there is a failure to comply substantially with any such provision" of the state's Medicaid plan.  42 U.S.C. § 1396c(2).  That is inapplicable here, so there is no "sole" remedy. Additionally, the fact that Congress did not authorize a private right of action under 340B and vested exclusive authority to oversee 340B in HHS is irrelevant in this context:  PhRMA is not arguing that Louisiana violated an obligation Louisiana has under 340B since the State is not a qualifying participant *at all*.  Accordingly, this is not an "extra-statutory suit[] by drug manufacturers to enforce § 340B against the States."  La. Br. at 48.

Finally, Louisiana argues (at 48-52) that there are "federalism" concerns, because 340B's "Spending Clause-like qualities" means it cannot have preemptive force.  But this Court has already held—repeatedly—that Spending Clause legislation has preemptive force.  *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 329-330 (5th Cir. 2005); *Detgen v. Janek*, 752 F.3d 627, 630 (5th Cir. 2014) (reaffirming that Spending Clause legislation can provide basis for preemption claim); *Tex. Riogrande Legal Aid, Inc. v. Range*, No. 3:10-cv-406, 2014 WL 12284039, at *10 (S.D. Miss. Mar. 31, 2014) ("The Fifth Circuit previously has recognized that a federal law enacted under the Spending Clause of the United States

Constitution can preempt state law."); *St. Luke's Health Sys., Ltd. v. Labrador*, No. 25-cv-00015, 2025 WL 888840, at *16 (D. Idaho Mar. 20, 2025).

Louisiana's waived "constitutional concerns" are meritless.

## II.    ACT 358 IS UNCONSTITUTIONALLY VAGUE

As PhRMA argued (at 52-56), Act 358 is unconstitutionally vague because it prohibits "interference" with the acquisition of 340B-priced drugs by contract pharmacies and with pharmacies themselves but does not define "interference." The scope of this prohibition is unclear, leaving manufacturers uncertain of its reach.

Louisiana asserts (at 56) that the term "interfere" in 2884(A) is limited by the terms that surround it—"deny, restrict, [and] prohibit" and thus "proscrib[es] actions that prevent or hinder the acquisition or delivery of Section 340B drugs to contract pharmacies." La. Stat. Ann. § 40:2884(A). But courts have repeatedly found statutes to be vague even where the vague term is included in a list of other prohibited acts. *See, e.g.*, *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 776 (4th Cir. 2023) (concluding law that prohibited "interfer[ing] with or … disturb[ing] in any way or in any place the students or teachers of any school or college in this State, … loiter[ing] about such school or college premises or … act[ing] in an obnoxious manner thereon" was unconstitutionally vague); *United States v. Elliot*, No. 2:17-cr-33, 2018 WL 11478272, at *1 (N.D. Ga. Aug. 8, 2018)

(analyzing regulation barring "[a]ny act or conduct by any person which interferes with, impedes or disrupts the use of the project or impairs the safety of any person").

Louisiana's lack of response as to Section 2884(B) is even more telling. That provision prohibits interference "with a pharmacy contracted with a 340B entity." La. Stat. Ann. § 40:2884(B). Unlike Section 2884(A), this provision does not include any of the purported "context," that Louisiana relies on. The legislature's refusal to include the same words in Section 2884(B) that were included in Section 2884(A) ("deny, restrict, [and] prohibit") must be given effect, and it thus makes no sense to limit the word to the same definition as in Section 4(1). *See Collins v. Yellen*, 594 U.S. 220, 248 (2021) ("[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 832 (5th Cir. 1979) (holding phrase must cover conduct "not already reached" by other statutory provisions and phrase was unconstitutionally vague).

And while Louisiana leans heavily on the standard it asserts should apply here, it ignores the need to define a clear violation when First Amendment concerns are implicated. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723-27 (2024) (noting lower standard in First Amendment context); *Planned Parenthood of Cent. N.J. v. Farmer*,

25

220 F.3d 127, 138 (3d Cir. 2000); *see also NetChoice, LLC v. Fitch*, No. 1:24-cv-170, 2024 WL 3276409 (S.D. Miss. July 1, 2024).    Manufacturers' policies, including those that request claims data, are protected by the First Amendment.  *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567-68, 570 (2011) (rejecting argument that state law regulating sale, disclosure, and use of prescriber-identifiable data did not regulate speech); *People for the Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau Fed'n, Inc.*, 60 F.4th 815, 821, 829, 844 (4th Cir. 2023) (applying First Amendment to state statute that barred, in part, "[c]ommitting an act that substantially interferes with the ownership or possession of real property" and stating that "scores of Supreme Court and circuit cases apply the First Amendment to safeguard the right to gather information as a predicate to speech").  Similarly, manufacturer efforts to obtain redress via audit, ADR proceedings, or public advocacy are protected under the First Amendment.  *See, e.g.*, *Van Deelen v. Johnson*, 497 F.3d 1151, 1156 (10th Cir. 2007) (Gorsuch, J.) ("[A] private citizen exercises a constitutionally protected First Amendment right *anytime* he or she petitions the government for redress"); *Smith v. Ark. State Highway Emps., Loc. 1315*, 441 U.S. 463, 464 (1979) (similar); *NAACP v. Button*, 371 U.S. 415, 428-29 (1963) (right to engage in advocacy).[11]

---

[11] PhRMA's challenge is both facial and as-applied.  PhRMA requests a declaration that Act 358 is unconstitutional *and* an injunction against "the implementation and

Act 358 is unconstitutionally vague.

## CONCLUSION

This Court should reverse the grant of summary judgment to the State and Intervenor, and remand with direction to enter summary judgment in PhRMA's favor.

Dated: **May 2, 2025**                    Respectfully submitted,

                                          */s/Philip J. Perry*

Jeffrey J. Gelpi                          Philip J. Perry
KEAN MILLER LLP                           Andrew D. Prins
909 Poydras Street, Suite 3600            Abid R. Qureshi
New Orleans, LA 70112                     Cherish A. Drain
(504) 585-2050                            LATHAM & WATKINS LLP
jeff.gelpi@keanmiller.com                 555 Eleventh Street, NW
                                          Suite 1000
L. Victor Gregoire                        Washington, DC 20004
KEAN MILLER LLP                           (202) 637-2200
400 Convention Street, Suite 700          philip.perry@lw.com
P.O. Box 3513 (70821-3513)
Baton Rouge, LA 70802
(225) 387-0999
victor.gregoire@keanmiller.com

*Counsel for Plaintiff-Appellant Pharmaceutical Research and Manufacturers of America*

---

enforcement of [Act 358] against PhRMA's members" and "the sale of [their] drugs under 340B." ROA24-30673.50; *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (explaining relief requested can indicate whether a challenge is facial or as-applied).

## CERTIFICATE OF SERVICE

I hereby certify that on **May 2, 2025**, the foregoing brief was electronically filed with the United States Court of Appeals for the Fifth Circuit through the Court's CM/ECF system.  All parties are represented by registered CM/ECF users and will be served by the CM/ECF system.

*/s/Philip J. Perry*
Philip J. Perry

## ECF CERTIFICATION

I hereby certify (i) the required privacy redactions have been made pursuant to Rule 25.2.13; (ii) the electronic submission is an exact copy of the paper document pursuant to Rule 25.2.1; and (iii) the document has been scanned for viruses using Microsoft Defender and is free of viruses.

Dated:  **May 2, 2025**

*/s/Philip J. Perry*
Philip J. Perry

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,486 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

This document complies with the typeface requirements and type-style requirements of Federal Rule of Appellate Procedure 32(a) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated:  **May 2, 2025**                          */s/Philip J. Perry*
                                              Philip J. Perry